T.C. Memo. 2020-139

UNITED STATES TAX COURT

LAWRENCE W. DOYLE AND JOHN F. MOYNIHAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4865-19W.                    Filed October 8, 2020.

Ps submitted to the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS"), pursuant to I.R.C. sec. 7623(b)(1), two Forms 211, "Application for Award for Original Information", with which they provided "specific credible documentation" supporting their allegations that several related entities (the "target") failed to comply with the requirements of I.R.C. sec. 501(c)(3) for tax-exempt organizations. The claims were referred to two operating divisions of the IRS--the Tax Exempt and Government Entities ("TEGE") Division and the Criminal Investigation ("CI") Division. TEGE recommended denial of the claim and reported that no investigation of the target was underway; but CI's report was equivocal as to whether it was "working with" Ps to investigate the target. The WBO issued a determination denying Ps' claim on the ground that "the IRS took no action based on the information that you provided." Ps filed a petition with this Court.

R moved for summary judgment on the dual grounds that "the IRS [1] did not proceed with an administrative or judicial action against the [target] Entity and [2] did not collect any proceeds based

[*2] on petitioners' claims." Ps opposed the motion, arguing that the WBO abused its discretion by not auditing the target and by concluding that the IRS did not proceed with any action on the basis of Ps' information.

> Held: Because the WBO's determination was not based on the non-collection of proceeds, R may not rely on that supposed ground to defend the determination.

> Held, further, the WBO's determination that CI did not "proceed[] with any * * * action" for purposes of I.R.C. sec. 7623(b)(1) was not supported by the administrative record and thus constituted an abuse of discretion; and R's motion for summary judgment will be denied.

Lawrence W. Doyle and John F. Moynihan, for themselves.

Patricia P. Davis, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: Petitioners, Lawrence W. Doyle and John F. Moynihan, have appealed, pursuant to section 7623(b)(4),[1] the determination of the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS") that denies them a whistleblower award. Respondent, the Commissioner of the IRS,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] has moved for summary judgment, asserting that the WBO did not abuse its discretion when it denied petitioners' claims, because the IRS did not use their information to conduct any examination or to collect any proceeds. Petitioners oppose the motion, contending that the IRS's Criminal Investigation ("CI") Division undertook an examination that is based on their information. For the reasons stated below, we will deny the Commissioner's motion.

Background

MDA's Form 211

Petitioners are associated in some manner with MDA Analytics, LLC ("MDA"). In August 2017 MDA submitted to the WBO a Form 211, "Application for Award for Original Information". Petitioners' names appear on MDA's Form 211. The form included publicly available information about several related entities (whom we refer to collectively as the "target"), alleging: that the target failed to comply with the requirements of section 501(c)(3) for tax-exempt organizations; that the target accepted foreign funds transfers as a "foreign agent", thereby vitiating charitable tax-exempt protection; and that the target made material misrepresentations to the IRS and to other governmental agencies concerning the target's organization and operations. The Form 211 stated that MDA had "[n]o relationship [to the target] other than concerned taxpayers".

**[*4]** MDA claimed in its Form 211 (and the Commissioner does not dispute) that--

> Petitioners submitted approximately 100 exhibits in excess of 6,000 pages compiled from their three-plus year investigation. Those exhibits and evidence lay out the clear framework of the wrongdoings committed by * * * [the target] and include the following: Applications; Determination Letters and Articles of Incorporation; Income Statements; Tax Returns (foreign and domestic); Consent Decrees; Memorandums of Understanding with foreign governments; Program Plans for Entity in question; Partnerships; Audits, foreign and domestic; Contractual Agreements with Non-Governmental Organizations; Reviews of State Registration Forms; IG Reports of Entities, foreign and domestic; Internal Legal Reviews of Entity in Question; Reviews of E-mail Exchanges between Entity Executives and Governmental Officials; Donor Tax Returns; Regulatory Reviews, Actions, and Subsequent Legal Settlement with Entity Partner; Interviews with Whistleblower and Current and Former Executives of Entity.

A WBO employee made a notation that "WB" (the whistleblower) had "submitted specific credible documentation."

Petitioners' Forms 211

The WBO replied to MDA with a letter advising that only individuals are eligible to file claims for awards and that MDA's Form 211 must be resubmitted by individuals. Each petitioner promptly filed his own separate Form 211, which the WBO received in September 2017. Both of petitioners' Forms 211 made the

**[*5]** same statements that had been in MDA's Form 211 and, we infer, had the same attachments as MDA's Form 211.

WBO's first referral to TEGE

The WBO reviewed petitioners' Forms 211 (and their attachments) and referred this information to the IRS office with subject matter responsibility over the issues raised, i.e., the Tax Exempt and Government Entities ("TEGE") Division. (Since the WBO made this referral, rather than issuing a threshold "rejection" of the claims, cf. 26 C.F.R. sec. 301.7623-1(c)(4), Proced. & Admin. Regs., we infer that the WBO continued to consider that petitioners' claims, like MDA's, presented "specific credible documentation".)

TEGE's referral to CI

A subject matter expert ("SME") at TEGE received petitioners' claims on March 16, 2018. On April 2, 2018, the SME "[r]eceived an E-Mail from Lynn Brinkley area Manager. Indicating that I should transfer this case and all related cases to CI per CI request." The SME therefore completed a Form 11369, "Confidential Evaluation Report on Claim for Award", and transferred petitioners' claims to CI.

**[*6]** <u>CI's reported decision not to investigate</u>

In July 2018 CI reported its decision on a Form 11369 dated July 10, 2018, that it declined to investigate the target or any of the issues that petitioners raised in their Forms 211.  Line 12 of the form asked:  "Was this claim surveyed or declined"; and the box indicating "Yes" was checked, and the blank was filled "Declined by Criminal Investigation".  Line 12(A) asked:  "Did the whistleblower information result in opening any other investigation with respect to the taxpayer(s) identified on this Form 11369 or any other taxpayers where an issue unrelated to the whistleblower issue(s) was discovered"; and the box indicating "No" was checked.  Line 12(B) asked:  "Was the claim declined due to a lack of criminal potential"; and the box indicating "Yes" was checked, and the blank was filled "Individual notated in the claim who had personal knowledge denied making those statements in an interview with federal agents."  CI returned petitioners' claims to the WBO.

When the WBO received the Form 11369 from CI, it was incomplete.  An entry dated 07/20/2018 in the WBO's "Claim Action Listing" stated:  "Received F11369, missing year in box 6.  Requesting F11369 have a year in box 6."  An entry dated 08/03/2018 notes:  "2d request for completed F13369 [sic]".  An entry dated 08/16/2018 stated:

**[*7]**   F11369 is incomplete.  Response received from the field is unacceptable, missing SSN's [Social Security numbers] & EIN's [employer identification numbers] taxpayer and WB.  Emailed SA to revise and told its [sic] somebody else's job, NO ICE [initial claim evaluation] indicators to release.

CI thereafter completed the form, and an entry dated 08/21/2018 recorded that the WBO "[r]eceived F11369 declined by CI.  Per lead instructions assign back to TEGE."[2]

WBO's second referral to TEGE

After receiving petitioners' claims from CI, the WBO, on about August 21, 2018, again assigned the claims to TEGE for review.  On September 20, 2018, the SME at TEGE composed an entry in his "Case Chronology Record" that stated:

> The whistleblower alleges that the Taxpayers fail[ed] to comply with 501c3 requirements; accepted foreign funds transfers as a foreign agent; thereby vitiating charitable tax exempt protection, and may have made material misrepresentations to IRS and other governmental agencies in re organization and operations.

---

[2]Petitioners allege--but the administrative record does not reflect--that, in this same general time period, one of them had a telephone conversation on August 1, 2018, with a Special Agent of the Federal Bureau of Investigation who said, "I can't say enough about what you and your colleagues have done in filing your submission and providing your materials.  We greatly appreciate everything you and your colleagues have done in your work."  Such non-record information might be pertinent to a motion to supplement the administrative record, see Van Bemmelen v. Commissioner, 155 T.C. __, __ (slip op. at 15-16) (Aug. 27, 2020), or to a request to obtain discovery; but we do not consider such information in ruling on the Commissioner's motion for summary judgment.

**[\*8]** Facts:  The organizations have filed all appropriate Forms 990/990PF and 990T for the periods of 2014-2017.  A review of the organization web site indicates that the activities are within the scope of 501(c)(3).  Review of the supporting documents appears to be created by the whistleblower organization, and not specific and credible.  The whistleblower did not provide evidence and supporting documentation which is creditable.  This claim were [sic] declined by Criminal Investigation, because individual notated in the claim who had personal knowledge denied making those statements in an interview with federal agents.

Conclusion:  These claims are being rejected[3] and not selected for examination, because the allegations are speculative in nature, the evidence submitted was not creditable, and because individual notated in the claim who had personal knowledge denied making those statements in an interview with federal agents. * * *

On the same day, he prepared and signed a Form 11369 to the same effect.  Where line 12 of the form asked:  "Was this claim surveyed or declined", the box indicating "Yes" was checked; and the blank was filled with the same three-paragraph narrative, quoted above, that was in the entry on his "Case Chronology Record".  Where line 12(A) asked:  "Did the whistleblower information result in opening any other investigation with respect to the taxpayer(s) identified on this Form 11369 or any other taxpayers where an issue unrelated to the whistleblower

---

[3]Although the SME stated that the claims were being "rejected", he manifestly used that term in a colloquial sense, and not indicating a threshold "rejection" based on the face of the claims by reference to minimum criteria of eligibility.  Cf. Lacey v. Commissioner, 153 T.C. 146, 161-163 (2019) (distinguishing threshold "rejection" of a claim from a merits "denial" of a claim).  The claims were in fact thereafter "denied" in due course.

**[*9]** issue(s) was discovered", the box indicating "No" was checked. Line 13 asked: "Was the claim transferred or reassigned"; and the box indicating "No" was checked.

WBO's preliminary decision to deny the claim

By October 31, 2018, petitioners' claims were back in the WBO, assigned to Analyst Debra McCullum. After a review of the administrative claim file, the analyst issued preliminary denial letters to petitioners on October 31, 2018. Each letter stated:

PRELIMINARY DENIAL LETTER

The Whistleblower Office has considered your application for an award dated August 1, 2017 and made a preliminary decision to deny your claim. Internal Revenue Code (IRC) section 7623(b) provides that an award may be paid only if the Secretary proceeds with an administrative or judicial action based on the information provided and the action results in the collection of tax, penalties, additions to tax, and additional amounts based on the information provided.

The claims listed above have been recommended for denial because the IRS took no action based on the information that you provided. * * *

If you believe that the Internal Revenue Service has erred in this preliminary decision, please submit your written comments within 30 days of the date of this letter to the undersigned * * *[.]

This letter is NOT a final determination for purposes of filing a petition with the United States Tax Court under IRC section 7623(b)(4). Following the 30 day period for your comments,

[*10] the Whistleblower Office will issue you a final determination. Any comments received regarding this preliminary decision will be considered by the Whistleblower Office in making a final determination.

Petitioners' response to the preliminary denial

On behalf of both petitioners, Mr. Doyle mailed a response to the WBO on November 20, 2018,[4] which stated as follows:

I write in strong opposition to the Preliminary Denial Letter and must say that it has taken me and my colleagues by utter surprise and amazement. With all due respect to those within the IRS involved in reviewing our submission and issuing the Preliminary Denial, there must be a significant error given that it is public knowledge that the IRS is clearly investigating * * * [the target], and is an active participant in the joint law enforcement effort being run out of * * * [city and State] and elsewhere within the justice system focused on * * * [the target]. It is also evident, based on information and communications referenced below, that many of the issues relating to tax fraud and 501(C)3 violations raised in our report are very much a focus of the joint FBI/IRS investigation into * * * [the target]. This investigation is ongoing. Our report gave rise to it and provided the basis for meaningful parts of it specifically within the realm of tax code violations and related issues of non-compliance within the law relating to charitable endeavors. Communications we have had with specific law enforcement agents, upon which I will expound more within this letter, confirm these very facts.

---

[4]To the same effect, petitioners allege in their opposition to the Commissioner's motion that, after they sent their November 20, 2018, response to the WBO, they "met with CI * * * on no less than five occasions, which meetings are not reflected in the Respondent's administrative record", and they support this allegation with their joint declaration (submitted under penalty of perjury in compliance with 28 U.S.C. sec. 1746 (2018)). We do not consider this non-record allegation in ruling on the Commissioner's motion for summary judgment.

[*11]    Our submission sets out evidence of a number of specific IRS tax code violations committed by * * * [the target] in connection with its global activities.  The report memorialized our more than 2 year investigation which remains ongoing.  The report is more than 6000 pages in length, and was supported by 95 Exhibits setting out confirming proof of our findings.  All of these materials and pages, including original contracts with foreign governments, exchanges between * * * [target] officials and foreign and domestic government officials, and reviews of each and every * * * [target] federal form 990 have been shared with and receipt confirmed by the Whistleblower Office in Ogden, Utah.

As indicated previously, we shared this report, our evidence, our notes of investigation, and our exhibits with the federal agents in * * * [city].  The FBI in * * * [city] has thanked us profusely and praised our report excessively.  As one individual close to the investigation commented to me, "you and your colleagues have saved numerous federal agents thousands of hours of work."

Our report reached the joint FBI/IRS Task Force in * * * [State] in * * * [month and year].  * * * [Petitioners' colleague] was in touch with the United States Attorney * * * [location and name] on * * * [date], who then referred us to FBI Special Agent * * * [name].  For the next several months, two members of our team * * * have been in regular contact with Special Agent * * * [name] providing information on an ongoing basis given that our investigative efforts continue to this very day.  We have shared all of the same materials submitted to the IRS Whistleblower Office with these offices and agents.  We have received both confirmation and excessive compliments on the quantity and quality of our work and the case manner in which we presented it.

To take a step back at this juncture, though, our efforts and ongoing work product are a result of not only thousands of hours of our own self-financed personal investigative pursuits but also endless hours of engagement with legal professionals, tax attorneys, accountants, and charity experts all well versed in the specific nature

[*12] of the work we have submitted.  We pushed hard in challenging these individuals to critique our work.  They pushed back hard so that our work product is fully vetted, refined, and exhaustive.  Additionally, prior to and/or subsequent to making our formal IRS Whistleblower Submission, we engaged or communicated with both current and former law enforcement officials, tax professionals and others within a wide array of state and federal offices including the following:  IRS, DOJ, FBI, US Postal Inspection Service, Treasury Inspector General Tax Administration, Counsel and Chief Counsel on the US House of Representatives Committee on the Judiciary, and officials within selected State Attorneys General, Secretaries of State, and/or Consumer Affairs offices.

In a similar fashion to the expressly stated gratitude and amazement at our work product that we received from Special Agent * * * [name], we have also received praise and compliments from countless others as well.  Not once has any single individual within these professional ranks or elsewhere pushed back in a manner that would indicate that our investigative efforts and work product were misdirected or misinformed.  On the contrary, the transparency we have provided in our efforts and submission has been enlightening to many of these professionals.  This same transparency is central to any robust investigative endeavor of the sort that we understand that the IRS/CID is engaged in as an active and full participant looking into the true nature of * * * [the target].  We further understand that this investigation is currently ongoing.  Furthermore, it is also clear, that the claims and allegations, including supporting evidence, that our team has provided to you as part of our whistleblower claim is central to this investigation; that it helped launch it; and the evidence of the violations set out in our submission are being actively investigated by the IRS and FBI in * * * [city].  Thus, it is simply cannot be the case that the "IRS took no action in this matter."

The assertion that the IRS is not investigating our claims is also belied by public reporting.  There have been a number of public, press reports confirming the IRS role in the investigation of * * * [the target] being pursued out of * * * [city].  For example, the photograph

[*13] shared by my colleague Mr. Moynihan in his communication with you depicts an IRS agent and an FBI agent participating in a search warrant in this investigation in * * * [city]. This picture is dated * * * [date].

In conclusion, we are confident that your office in * * * [city] can confirm the above. We also are confident that upon review you will agree that your letter to us is fully inconsistent with the feedback we have received elsewhere from other former and current government officials and was thus issued in error. As such, please accept this letter in strong opposition to the notice of Preliminary Denial. We respectfully request that the above information be confirmed within your agency and that our efforts are accorded the full and appropriate consideration and credit that they deserve. We look forward to this confirmation and the withdrawal of this Preliminary Denial so that the rule of law upon which our nation stands can be upheld and so that Americans everywhere can have confidence that lady justice truly is blind.

Of course, we stand ready to provide proof and confirmation of any of the above.

WBO's consultation with CI

The WBO analyst reacted as follows to petitioners' submission of

November 20, 2018:

Upon receipt of petitioners' response to the preliminary denial letter, I conducted a diligent search of the IRS Integrated Data Retrieval System to confirm there were no open IRS examinations involving * * * [the target]. I also coordinated with the Whistleblower Office CI liaison to confirm with CI headquarters that there is no ongoing CI investigation of * * * [the target].

**[*14]** That "coordinat[ion] with the Whistleblower Office CI liaison" apparently consisted of a two-email exchange between Laura Meis in the WBO and David Denning in CI. On January 30, 2019, she stated: "We have a WB that claims he is working with an IRS agent jointly with the FBI regarding" the target. She described in some detail the nature of petitioners' allegations, and she quoted one paragraph (also quoted above) of petitioners' November 2018 letter:

> Our report reached the joint FBI/IRS Task Force in * * * [State] in * * * [month and year]. * * * [Petitioners' named colleague] was in touch with the United States Attorney * * * [location and name] on * * * [date], who then referred us to FBI Special Agent * * * [name]. For the next several months, two members of our team * * * have been in regular contact with Special Agent * * * [name] providing information on an ongoing basis given that our investigative efforts continue to this very day. We have shared all of the same materials submitted to the IRS Whistleblower Office with these offices and agents. We have received both confirmation and excessive compliments on the quantity and quality of our work and the case manner in which we presented it.

The email concluded with a single bullet-point question (emphasis added)--

> • Can you please <u>confirm that IRS CI is not working with</u> these WBs on any investigation with these [target] entities?

CI's succinct emailed reply from Mr. Denning to the WBO, sent February 11, 2019, stated in its entirety:

> Hi Laura,
> The claim was appropriately declined by criminal investigation.

[*15] WBO's final determination

The WBO analyst drafted an award recommendation memorandum that stated:

> I am recommending the issuance of a Final denial letter because the IRS took no action based on the information the WB provided. IDRS shows no audit activity for the prior and subsequent years. * * * The analyst has reviewed the WB's response and contacted CI HQ to determine whether CI is still involved in an investigation. Based on the response from CI HQ the preliminary denial decision will not be revised. The decision by the operating division (CI) is final.

On February 19, 2019, the WBO sent each petitioner a final determination letter denying his claim. Each letter stated:

> FINAL DETERMINATION
>
> The Whistleblower Office has considered your Form 211, Application for Award for Original Information, dated August 1, 2017. * * *
>
> Internal Revenue Code (IRC) section 7623 provides that an award may be paid only if the Secretary proceeds with an administrative or judicial action based on the information provided and the action results in the collection of tax, penalties, interest, additions to tax, or additional amounts based on the information provided. The Whistleblower Office has made a final determination to deny your claim for an award.
>
> The claim has been recommended for denial because the IRS took no action based on the information that you provided. * * * [Emphasis added.]
>
> This letter is a final determination for purposes of filing a petition with the United States Tax Court. Under IRC section 7623(b)(4), you

[*16] have 30 days from this determination to file a petition with the Tax Court.

The final determination letters did not explicitly state lack of collected tax proceeds as a basis for denial of the claims.

On March 11, 2019, petitioners filed a timely petition challenging the WBO's final determination.

The Commissioner's motion for summary judgment

The Commissioner filed his motion, contending: "The supporting documents from the administrative claim file fully support the Whistleblower Office's determination that the IRS did not proceed with an administrative or judicial action against the [target] Entity and did not collect any proceeds based on petitioners' claims." Specifically, the Commissioner contended:

> [T]he Whistleblower Office sent petitioners' claims to the TEGE SME, who reviewed petitioners' information and did not open an examination of the Entity's tax returns. The IRS CI also reviewed petitioners' claims and declined to pursue a criminal investigation[5] due to lack of criminal potential and because the "individual notated

---

[5]See also the motion at 4 ("CI declined to investigate the [target] Entity or any of the issues raised by petitioners' in their Forms 211"); id. at 6 ("the Whistleblower Office CI liaison * * * confirmed with CI headquarters that there is no ongoing CI investigation of the [target] Entity"); the Commissioner's reply at 3 ("two IRS operating divisions considered petitioners' claim and declined to open an examination"); id. at 4 ("the Whistleblower Office CI liaison who confirmed with the Acting Deputy Chief of Staff at CI headquarters in February of 2019 that there is no ongoing CI investigation of the entities").

**[\*17]** in the claim who had personal knowledge denied making those statements in an interview with federal agents." Moreover, a search of the IRS Integrated Data Retrieval System by the Whistleblower Analyst confirmed there are no open IRS examinations involving the [target] Entity. The supporting documents from the administrative claim file fully support the Whistleblower Office's determination that the IRS did not proceed with an administrative or judicial action against the [target] Entity and did not collect any proceeds based on petitioners' claims. [Emphasis added.]

Petitioners opposed the motion. They argue that their claims and other information strongly support their allegations of tax violations by the target and that the IRS failed to respond reasonably to the information they had provided. The opposition concludes:

> WHEREFORE, Petitioners pray that this Honorable Court:
>
> 1. Deny the Respondent's Motion for Summary Judgment; and
>
> 2. Direct judgment on the pleadings in favor of Petitioners and direct the appointment of an independent investigator outside of the Internal Revenue Service to review this submission due to the clear abuse of discretion present in this matter or, alternatively, direct the Whistleblower Office to assign new investigators within the office under the review of a U.S. Tax Court appointed monitor to review the claim; or
>
> 3. Order the Respondent to initiate informal discovery as requested in the Petitioners' Branerton Letter.

We hold below that some of petitioners' arguments lack merit, but one contention requires us to deny the Commissioner's motion.

**[\*18]**                                    <u>Discussion</u>

I.      <u>General legal principles</u>

     A.      <u>Whistleblower claims and the WBO's function</u>

In section 7623(b), entitled "Awards to Whistleblowers", Congress

provided an incentive for providing to the IRS information on taxpayers'

noncompliance with the tax laws, in return for which--if the IRS uses that

information to collect proceeds--the whistleblower will be entitled to a percentage

of the collected proceeds.  Section 7623(b)(1) provides:

> If the Secretary proceeds with any administrative or judicial action
> described in subsection (a) based on information brought to the
> Secretary's attention by an individual, such individual shall * * *
> receive as an award * * * [a percentage] of the collected proceeds
> * * * resulting from the action * * *.

By those terms, a whistleblower will receive an award only if (1) the IRS

"proceeds with * * * [an] action" on the basis of his information <u>and</u> (2) the IRS

collects proceeds as a result of that action.  The WBO will deny the claim if it

determines that "the IRS either did not proceed based on the information provided

by the whistleblower * * * or did not collect proceeds" as a result of proceeding

against the taxpayer on the basis of the whistleblower's information.  26 C.F.R.

sec. 301.7623-3(c)(8).

**[\*19]** B.    Standard and scope of Tax Court review of whistleblower awards

1.    The "record rule" and the abuse-of-discretion standard

Section 7623(b)(4) provides that a "determination regarding an award" may be "appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."  As we held in Kasper v. Commissioner, 150 T.C. 8, 21-23 (2018), in a whistleblower case our review is generally restricted to the administrative record, and under this "record rule" we review the WBO's determinations not de novo but rather for abuse of discretion.  An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Id. at 21-22; Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  As we explained in Cline v. Commissioner, T.C. Memo. 2020-35, at \*15 (fn. refs. omitted):

> It is not to the Tax Court but to the Secretary of the Treasury that Congress has given the authority to "make the inquiries, determinations, and assessments of all taxes", sec. 6201, and to "collect the taxes", sec. 6301.  The Tax Court has no practical means for evaluating the IRS's audit priorities, its allocation of its audit resources, or its judgments about the likelihood of collecting particular liabilities.  Congress has given to the Tax Court not plenary oversight over the IRS but rather circumscribed jurisdiction to review certain actions in certain circumstances.  In the award context, Congress has given the Tax Court jurisdiction to review the determinations of the WBO.  Consequently, "we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim and \* \* \* we have no authority to require the

**[\*20]** IRS to explain a decision not to audit." Lacey v. Commissioner, 153 T.C. \* \* \* [146, 164 (2019)].

### 2. Reviewing the grounds stated

"[T]he Tax Court reviews a WBO determination by reference to the grounds that it states, not by reference to post hoc rationalizations." Lacey v. Commissioner, 153 T.C. at 165 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see Kasper v. Commissioner, 150 T.C. at 23-24. We therefore look to the final determination letter and generally consider only the grounds stated therein, not other grounds advanced by the Commissioner's counsel in the litigation but not by the WBO in its determination.

### C. Summary judgment

Generally speaking, under Rule 121(b) the Court may grant summary judgment when "there is no genuine dispute as to any material fact and \* \* \* a decision may be rendered as a matter of law". Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The Commissioner's motion cites this rule and invokes this standard.

However, we have recently observed that--

this summary judgment standard is not generally apt where we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion. \* \* \* [I]n a "record rule" whistleblower case there will not be a trial on the merits. In such a

[*21] case involving review of final agency action under the APA, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. * * *

Van Bemmelen v. Commissioner, 155 T.C. at __ (slip op. at 25-26). That distinction (the more demanding standard of denying the motion if the record simply shows a dispute of fact versus the less demanding standard of denying the motion only if the record fails to support the conclusion) does not affect the outcome in this case since, as we explain below, the administrative record does not support a critical premise of the WBO's determination, and we therefore deny the motion even under the less demanding standard.

II.     Analysis

The Commissioner cites materials from the administrative record to make a showing that petitioners' claims were referred to IRS personnel in two operating divisions--TEGE and CI--and that, in the words of section 7623(b)(1), neither division decided to "proceed[] with any administrative or judicial action * * * based on information brought to the Secretary's attention by" petitioners. The Commissioner's motion asserts that "[t]he supporting documents from the administrative claim file fully support the Whistleblower Office's determination that the IRS [1] did not proceed with an administrative or judicial action against

[*22] the [target] Entity and [2] did not collect any proceeds based on petitioners' claims." We address each aspect of this alleged two-fold determination.

### A. Lack of collected proceeds

The Commissioner's motion errs by stating, as a supposed second aspect of the WBO's determination, that the IRS "did not collect any proceeds based on petitioners' claims". A lack of collected proceeds will indeed properly result in the denial of an award, because the only award to which a whistleblower may become entitled is a percentage "of the collected proceeds * * * resulting from the [administrative or judicial] action" that is "based on information brought to the Secretary's attention by" the whistleblower. Sec. 7623(b)(1). If there are no proceeds, there can be no award. However, we do not know of any evidence in the administrative record in this case establishing whether tax proceeds were collected.

More important for present purposes, the final determination letters did not assert a lack of collected tax proceeds as a basis for denying the claims. As we noted, supra part I.B.2, citing Lacey v. Commissioner, 153 T.C. at 165, we review only the determination that the WBO made, not other determinations that it might have made but did not make.

[*23] Admittedly, it might seem that, if there had been no "administrative or judicial <u>action</u> * * * based on information brought to the Secretary's attention by" the whistleblower, then it must inevitably be true that there could therefore be no "<u>proceeds</u> collected as a result of the action" that was never taken. Sec. 7623(b)(1) (emphasis added).

However, proving non-collection of proceeds would be a different undertaking, supported by a different sort of evidence, from proving that no administrative or judicial action was commenced. The latter might seem to necessitate the former; but since we do not know what we do not know, we decline to grant summary judgment on an assumed fact for which the Commissioner's motion did not make a showing and that the WBO did not determine. Therefore, we consider further only the WBO's actual determination--i.e., that "[t]he claim has been recommended for denial because the IRS took no action [i.e., administrative or judicial action] based on the information that you provided."

B.    Lack of administrative or judicial action

The WBO concluded that, in the words of section 7623(b)(1), the IRS did not "proceed[] with any administrative or judicial action * * * based on information brought to the Secretary's attention by" petitioners. The record shows that the WBO referred petitioners' claims to two operating divisions--TEGE and

[*24] CI--and that the WBO concluded that neither division proceeded with any action and that therefore the claims should be denied. Against the Commissioner's argument, petitioners make some contentions that lack merit and one that we must sustain.

### 1. Whether the IRS's audit decisions were correct

Much of petitioners' argument assails the IRS's failure to audit the target after petitioners had submitted a wealth of information that, they maintain, amply justified such an audit. Petitioners argue both (1) that their information-- acknowledged by the WBO's initial evaluators as "specific credible documentation"--demonstrated convincingly that the target was violating the Internal Revenue Code and (2) that the IRS's consideration of their information must have been cursory, misguided, and undiscerning.[6] Petitioners conclude that

---

[6]For example, petitioners' claims had included allegations from an individual with personal knowledge, but CI's Form 11369, by which it declined to investigate the target, stated that the "[i]ndividual notated in the claims who had personal knowledge denied making those statements in an interview with federal agents." Petitioners contend that CI or the WBO was unduly credulous of that denial: "[T]hat individual's interview comprises only a small part of the evidence included with the submission. Further, the Petitioners specifically allege that the 'individual' is complicit in the actions of the Subject Entity [i.e., the target] and, on numerous occasions, knowingly signed documents under penalties of perjury that contained falsehoods and/or omissions."

**[\*25]** the IRS "does not seem to have much of an interest in actually investigating the submission."

Petitioners stoutly dispute the Commissioner's "assertion that the statute does not 'confer [on the Tax Court] the authority to direct the IRS to commence an administrative or judicial action.'" They ask us to review the IRS's decision not to audit and, when we see how deficient its process was, to "direct the appointment of an independent investigator outside of the Internal Revenue Service to review this submission due to the clear abuse of discretion present in this matter or, alternatively, direct the Whistleblower Office to assign new investigators within the office under the review of a U.S. Tax Court appointed monitor to review the claim[s]."

As we explained, see supra part I.B.1, quoting Cline v. Commissioner, at \*15, such "monitor[ing]" or take-over of the IRS's audit function is plainly outside the power we have been granted. In reply to the Commissioner's contentions to this same effect, petitioners object that "[r]espondent boldly contends that this Court has no authority to do much of anything and, therefore, seems to believe that it [the IRS] can act (or fail to act) as it wishes with little to no recourse." However counter-intuitive it may be, as we noted above, "we do not review the IRS's decision whether to audit a target in response to a

[*26] whistleblower's claim and * * * we have no authority to require the IRS to explain a decision not to audit." Lacey v. Commissioner, 153 T.C. at 164. Consequently, we must reject all of petitioners' arguments and requests for relief that presume otherwise.

### 2. Whether CI proceeded with any action

We cannot as quickly dispose of petitioners' contention that, as a matter of fact, CI did investigate the target and thus did "proceed[] with any administrative or judicial action * * * based on information brought to the Secretary's attention by" petitioners, for purposes of section 7623(b)(1). If the record does not support the WBO's conclusion that CI did not conduct an investigation of the target using petitioners' information, then the WBO abused its discretion when it determined that "the IRS took no action based on the information that you provided"; and that error may have resulted in a premature denial of an award that may eventually become due, depending on the results of that investigation.

Prompted by petitioners' allegations--explicit and detailed, with names, dates, and locations--the WBO's email put a single direct question to CI: "Can you please confirm that IRS CI is not working with these WBs on any investigation with these [target] entities?" CI's reply was a non-answer that looks

[*27] like it may have been a deliberate evasion: "The claim was appropriately declined by criminal investigation."

But was CI "working with" petitioners or not? CI did not say. And it gives us no confidence in the WBO's determination to note (as the administrative record shows) that in 2018 CI had to be asked three times to complete its Form 11369 for this case, giving "unacceptable" responses to the WBO and grousing that it's "somebody else's job". We therefore hold that the administrative record, containing petitioners' detailed allegations and CI's non-response, fails to support the WBO's conclusion that CI had not proceeded with any action based on petitioners' information. Accordingly, we deny the motion on the grounds that the WBO abused its discretion in reaching its conclusion, because not all of its factual determinations underlying that conclusion are supported by that record.

## Conclusion

We will deny the Commissioner's motion for summary judgment because the WBO's factual conclusion that there had been no "proceed[ing]" under section 7623(b)(1) was an abuse of its discretion, and we will order the parties to propose a schedule for further proceedings.

[*28]  To reflect the foregoing,

An appropriate order will be issued.